USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  1/12/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EVERINS GROUP, LLC,

                                    Plaintiff,

            -against-

NOVA CASUALTY CO.,

                                    Defendant.

25-CV-08241 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

This is a breach of contract action between Plaintiff Everins Group, LLC, and Defendant Nova Casualty Co. Presently before the Court is Defendant's motion to compel arbitration (Dkt. No. 14). For the following reasons, the motion is GRANTED.

## RELEVANT BACKGROUND

Understanding the parties' dispute requires a brief background on their contract, titled the "Program Management Agreement" or "PMA" for short. Dkt. No. 1 ("Compl.") ¶ 9.

The PMA obligated Plaintiff to provide services to Defendant in exchange for a commission. *Id.* ¶ 11. The commission was determined using a mathematical ratio called the "Loss Ratio." *Id.* ¶ 13. If the Loss Ratio fell below 45%, the PMA pegged Plaintiff's compensation at a "rate of 27% or 28%." *Id.* ¶ 18. Per the PMA, the parties calculated the Loss Ratio by dividing "Losses Incurred" by "Actual Gross Written Premium," *i.e.* Loss Ratio = Losses Incurred/Actual Gross Written Premium. *Id.* ¶ 13. The PMA defines Losses Incurred as all losses "less those losses and loss adjustment expenses ceded to reinsurers." *Id.* ¶ 14.

Plaintiff now contends that—unbeknownst to it—Defendant maintained 100% reinsurance. *Id.* ¶ 16. If there was 100% reinsurance, Plaintiff asserts that Losses Incurred always equaled zero. *Id.* ¶ 17. Because zero divided by anything is still zero, the Loss Ratio was

1

necessarily less than 45%, so Defendant should have calculated Plaintiff's commission at a rate of 27% or 28%. Nevertheless, Plaintiff alleges, Defendant consistently paid Plaintiff less than the applicable rate of 27% or 28%. *Id.* ¶¶ 19–20. Plaintiff alleges that the difference between what it was paid and what it should have been paid using the correct commission percentage totals at least $1,915,130.40. *Id.* ¶ 21.

Plaintiff commenced the present action seeking that amount. Its complaint includes two counts. First, breach of contract, seeking a damages award of $1,915,130.40. *Id.* ¶ 28. Second, "declaratory relief," seeking a declaration that Defendant underpaid it "in at least the amount of $1,915,130.40." *Id.* ¶ 33.

Defendant answered the complaint by moving to compel arbitration. Dkt. No. 14. It argues that the PMA includes an arbitration provision (the "Arbitration Provision"). Referring to Defendant as "the Company" and Plaintiff as "the Program Manager," the Arbitration Provision states:

> The Company has the sole right to elect arbitration as a remedy to resolve any dispute between the Company and the Program Manager that arises out [of] the terms, conditions or obligations set forth in the Agreement. When the Company so elects, such unresolved difference of opinion shall be submitted to arbitration by three arbitrators.

Dkt. No. 15 ("Mot.") at 3. Defendant argues the Federal Arbitration Act ("FAA") applies because the PMA is a written agreement with an arbitration provision and "involve[es] commerce." *Id.* at 6. Plaintiff's breach-of-contract action falls within the Arbitration Provision, Defendant argues, because it necessarily "arises out [of] the terms, conditions or obligations" of the PMA. *Id.* at 9. And—although the parties have since terminated the PMA—Defendant contends the Arbitration Provision survives under settled precedent concerning arbitration agreements. *Id.* at 8.

Plaintiffs' opposition relies on a provision of the PMA that permitted either party to initiate a court action seeking "injunctive relief, restraining orders, specific performance or other equitable relief as may be necessary or appropriate."[1] Dkt. No. 20 ("Opp.") at 3. This "Supplemental Provision," Plaintiff argues, means the Arbitration Provision does not empower Defendant to compel arbitration in this action. *Id.* at 3–4. Next, Plaintiff argues that the current action does not "arise out of" the PMA because Defendant's "own correspondence confirms that its position – and its demand for arbitration – rests not on any PMA provision, but on alleged 'customs and practices of other insurance and reinsurance business.'" Opp. at 5. Lastly, Plaintiff argues that the Arbitration Provision does not survive the PMA's termination. *Id.* at 6. It relies on a clause of the PMA specifying that, if the PMA was terminated, each party's obligations survive "with respect to business in force at the time of termination and shall continue to be discharged promptly." *Id.*

---

[1] The full provision reads:

> Notwithstanding anything above to the contrary, [Nova] and [Everins] acknowledge and agree that in the event of any threatened or actual breach of this Agreement or any related agreement by either party, either party will suffer immediate and irreparable injury not compensable by money damages and for which either party will not have an adequate remedy at law. Accordingly, if either party institutes an action or proceeding to enforce the provisions of this agreement, it shall be entitled to obtain, from a court of competent jurisdiction . . . such injunctive relief, restraining orders, specific performance or other equitable relief as may be necessary or appropriate. . . The foregoing shall be in addition to and without prejudice to other rights or remedies as either party may have at law or in equity.

Opp. at 3.

3

## STANDARD OF REVIEW

Under Section 2 of the FAA, arbitration agreements are generally "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Where a party to an arbitration agreement refuses to comply with that agreement, and instead attempts to proceed in litigation, the other party may move to stay the litigation . . . and compel arbitration." *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 240 (S.D.N.Y. 2020) (citing 9 U.S.C. §§ 3–4).[2] The FAA establishes "a liberal federal policy favoring arbitration agreements." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 120 (2019) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). And it "leaves no place for the exercise of discretion by a district court," instead mandating "arbitration on issues as to which an arbitration agreement has been signed." *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

In assessing the enforceability of an arbitration clause, courts must determine (1) "whether the parties have entered into a valid agreement to arbitrate," and (2) "whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). The FAA requires courts to enforce arbitration agreements "according to their terms." *Id.* at 127 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 479 (1989)). Any ambiguities as to the scope of the arbitration clause must be "resolved in favor of arbitration." *Bechtel do Brasil Construcoes Ltda. v. UEG Araucaria Ltda.*, 638 F.3d 150, 155 (2d Cir. 2011) (citing *Moses H.*

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

4

*Cone Mem'l Hosp.*, 460 U.S. at 24–25). Federal courts "apply ordinary state-law principles that govern the formation of contracts" in determining whether a valid agreement to arbitrate exists. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

## DISCUSSION

The first issue is whether Plaintiff and Defendant entered a valid agreement to arbitrate. A necessary corollary to Plaintiff's complaint is that it and Defendant entered a valid and legally binding contract: the PMA. The PMA includes the Arbitration Provision, which unambiguously permits Defendant to compel arbitration of claims that "arise[] out of" the PMA's "terms, conditions, or obligations." Mot. at 3. Therefore, the parties entered into a valid agreement to arbitrate. The FAA applies because the PMA is indisputably a written agreement involving commerce. *See Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761–62 (S.D.N.Y. 2013).

The second issue is whether this lawsuit falls within the scope of that valid agreement to arbitrate. The Arbitration Provision encompasses disputes that "arise[] out of the terms, conditions or obligations of the" PMA. Mot. at 3. Plaintiff contends that Defendant breached its PMA obligations by depressing Plaintiff's commission. Compl. ¶¶ 19–20. Accordingly, this action arises out of the PMA's terms, condition, and obligations. Moreover, it would be difficult to imagine a breach-of-contract claim that did not arise out of the contract itself.

Therefore, a valid arbitration agreement exists between the parties, and this case falls within its scope. Plaintiff's arguments opposing arbitration fail in quick succession.

First, Plaintiff argues that the Supplemental Provision permits it to avoid arbitration. The PMA's Supplemental Provision permitted Plaintiff or Defendant to—notwithstanding the Arbitration Provision—come to court seeking "injunctive relief, restraining orders, specific

performance or other equitable relief as may be necessary or appropriate." Opp. at 3. Neither of Plaintiff's requested relief—damages or a declaratory judgment, is equitable relief. *See Berkley Assurance Co. v. John H. Fisher, P.C.*, 771 f. Supp. 3d 292, 308 (S.D.N.Y. 2024) (holding that a party seeking a declaratory judgment sought legal relief because the lawsuit involved contractual claims to benefits under an insurance policy); *Connecticut General Life Ins. Co. of New York v. Cole*, 821 F. Supp. 193, 197 (S.D.N.Y. 1993) ("Since a contractual claim to benefits is a *legal* claim, the declaratory judgment plaintiffs seek is a form of *legal* relief . . . ."). The Supplemental Provision does not apply to Plaintiff's claims in this suit.

Second, Plaintiff argues that its lawsuit does not fall within the arbitration provision because Defendant intends to make arguments about insurance customs. Opp. at 5. This argument fails to convince the Court that Plaintiff's complaint alleging breach of the PMA does not "arise out of" the PMA.

Third, Plaintiff argues that the PMA's arbitration provision did not survive the PMA's termination. Opp. at 6. Consistent with the strong policies favoring arbitration, courts presume that arbitration clauses survive an agreement's termination absent some indication of contrary intent in the agreement. *See Butchers, Food Handlers & Allied Workers Union, Local 174 v. Hebrew Nat. Kosher Foods, Inc.*, 818 F.2d 283, 287 (2d Cir. 1987); *Salzano v. Lace Ent. Inc.*, No. 13-CV-5600 (LGS), 2014 WL 3583195, at *4 (S.D.N.Y. July 18, 2014). Nothing in the PMA evinces such intent. Plaintiff highlights that the PMA includes a provision specifying that—in the event of termination—all parties shall continue to have obligations to perform services concerning "business in force." Opp. at 6. Because there is no similar provision regarding arbitration, Plaintiff argues, the parties did not intend the arbitration provision to survive the PMA's termination. *Id.* This argument ignores that—because arbitration provisions

6

are already presumed to survive termination as a matter of law—there would have been no need to address survival unless the parties intended the provision *not* to survive termination.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to compel arbitration (Dkt. No. 14) is GRANTED.  The Court will COMPEL arbitration and STAY this matter.  The parties are hereby ORDERED to file an update every sixty (60) days regarding the status of arbitration and a letter within seven (7) days of a judgment in the arbitration.

Dated: January 12, 2026
       New York, New York

SO ORDERED.

_____
MARGARET M. GARNETT
United States District Judge